**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

CARLOS FIERRO,

    Plaintiff,

vs.                                                                                                   No. CIV 07-28 JP/RHS

U.S. CUSTOMS & BORDER PROTECTION,
and U.S. IMMIGRATION & CUSTOMS
ENFORCEMENT,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Based on Plaintiff's assumption that a Continental Airlines representative falsely alerted U.S. Customs officials that Plaintiff was engaged in conduct that led to Plaintiff's arrest, Plaintiff brings this Freedom of Information Act (FOIA) request to compel disclosure of redacted information in records relating to him held by U.S. Customs & Border Protection and U.S. Immigration & Customs Enforcement.[1]  (*See* Compl. ¶ 13).  Plaintiff's FOIA request must be denied because the redacted information Plaintiff seeks to obtain falls within two exemptions to required FOIA disclosure and because the information neither explicitly nor by implication indicates that any Continental Airlines representative was, in any manner, involved in activity that resulted in Plaintiff being investigated and arrested.[2]

---

[1] Both agencies are within the Department of Homeland Security, so this Memorandum Opinion and Order will refer to both Defendants collectively as the "Department."
*See* Department of Homeland Security Organizational chart, at
http://www.dhs.gov/xlibrary/assets/DHS_OrgChart.ped (Feb. 1, 2008).

[2] Plaintiff's belief that Continental Airlines personnel may have been complicit in providing information that caused U.S. Customs officials to investigate him apparently derived from some bad experiences Plaintiff previously had with Continental Airlines.  Plaintiff alleged that, "Plaintiff, who travels regularly between Quito and the United States, had experienced problems with representatives of Continental Airlines in Quito on several occasions . . . ." (Compl. ¶ 9).

On October 30, 2007, the Department filed Defendant Department of Homeland Security's Motion for Summary Judgment (Doc. No. 14) on behalf of both Defendants. Plaintiff responded on December 7, 2007 (Doc. No. 16), and Defendant did not file a reply.

In addition to the parties' briefs, the Court has also reviewed *in camera* the sealed declaration of Gloria Marshall, the responsible official at the Department of Homeland Security, and a clean copy of the records that had been disclosed to Plaintiff. Based on these materials, the Court concludes that Defendants' motion for summary judgment should be granted.

**I.     INTRODUCTION AND FACTUAL BACKGROUND**

On February 23, 2005, Plaintiff flew from Quito, Ecuador to Albuquerque on a Continental Airlines flight. (Compl. ¶ 3). Upon arriving at the Houston International Airport, U.S. Customs agents searched Plaintiff's person and luggage, and found 0.3 grams of cocaine in the luggage. (*Id*. ¶ 5). Plaintiff was arrested and spent two nights in jail. (*Id*. ¶ 6). The state dropped all criminal charges against Plaintiff on April 28, 2005 after Plaintiff passed a two-hour polygraph examination. (*Id*. ¶ 7). Plaintiff alleges that he had difficulties with Continental Airlines representatives on previous flights to and from Ecuador and believes that a Continental Airlines employee in Quito "intentionally and maliciously planted contraband in his luggage and alerted U.S. Customs officials in Houston in order that he be searched." (*Id*. ¶¶ 9–10).

Seeking the identity of the person suspected of "falsely alerting U.S. Customs officials," Plaintiff filed a FOIA request with Defendant on June 30, 2005. (*Id*. ¶ 2). Defendant responded on November 19, 2006 with ten pages of documents from the Department's electronic database pertaining to the Plaintiff. (Marshall Decl.). Significant portions of these ten pages had been blacked out, and the Department marked each redacted section with a notation of which FOIA exemption justified the redaction. Plaintiff filed this suit to challenge the Department's decision to

redact this information. Specifically, Plaintiff contends that the name of a hypothetical Continental Airlines employee who Plaintiff believes tipped off U.S. Customs officials was withheld entirely or redacted from information provided to Plaintiff.

Plaintiff requests that the Court order the Department to produce this information, and award Plaintiff reasonable attorney's fees and litigation costs under 5 U.S.C. § 552(a)(4)(E). Plaintiff's requested relief is specific to "all information relating to the informant and his relationship to Continental Airlines." (Pl.'s Response to Motion for Summary Judgment ¶ 6).

## II.     STANDARD: MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Santana v. City & County of Denver*, 488 F.3d 860, 864 (10th Cir. 2007) (citing Fed. R. Civ. P. 56(c)). The court must examine the record and draw reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000). Summary judgment is proper where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). In a FOIA case, the moving party must demonstrate that there is no dispute as to key factual premises underlying a determination of consequences of releasing information. *Alyeska Pipeline Serv. Co. v. U.S. Envt'l Prot. Agency*, 856 F.2d 309, 313 (D.C. Cir. 1988).

### III. DISCUSSION

#### A. Freedom of Information Act

Congress enacted the Freedom of Information Act, 5 U.S.C.S. § 551 et seq., with the purpose of "ensur[ing] an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). Congress created nine exemptions to the general rule of mandatory disclosure in recognition of the fact that unfettered disclosure could harm government interests and the privacy of citizens. 5 U.S.C. § 552(b). Because the purpose of FOIA is to encourage openness in government, the court construes the statute broadly in favor of disclosure, so these nine exemptions are to be narrowly circumscribed. *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1226 (10th Cir. 2007). At the same time, FOIA evinces "cross-currents" of concern, in that "Congress evidenced a secondary purpose when it enacted FOIA of preserving the effective operation of governmental agencies." *Crooker v. Bur. Alcohol, Tobacco & Firearms*, 670 F.2d 1051, 1074 (D.C. Cir. 1981) (en banc). The agency has the burden of showing that it properly invoked the exemptions. 5 U.S.C. § 552(a)(4)(B); *see also Trentadue*, 501 F.3d at 1226; *Alirez v. Nat'l Labor Relations Bd.*, 676 F.2d 423, 425 (10th Cir. 1982).

If a citizen is dissatisfied with the agency's response to a FOIA request, 5 U.S.C. § 552(a)(4)(B) provides the district court with subject matter jurisdiction "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." In an action brought under FOIA, the district court reviews *de novo* the agency's decision to withhold the requested materials, and "may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld

under any of the exemptions." *Id.*; *Anderson v. Health & Human Servs.*, 907 F.2d 936, 941 (10th Cir. 1990).

**B.      Whether the Department Withheld Information**

Plaintiff does not specifically allege that the Department's search for documents was inadequate, but does generally allege that the Defendant has "withheld" information. (Compl. ¶ 12.) An agency is under a duty to conduct a reasonable search for responsive records. *See Oglesby v. U.S. Dep't of the Army, et al.*, 920 F.2d 57, 68 (D.C. Cir. 1990). A reasonable search is one that involves a good faith effort, "using methods which can be reasonably expected to produce the information requested." *Id.* at 68.

The agency may show that it has conducted a reasonable search using detailed, nonconclusory affidavits of responsible officials, which are submitted in good faith. *See Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 1985); *Goland v. Cent. Intelligence Agency*, 607 F.2d 339, 352 (D.C. Cir. 1978). Defendant has submitted a sworn Declaration of Gloria Marshall, the Chief of the Information Disclosure Unit for the U.S. Immigration and Customs Enforcement (ICE), within the Department of Homeland Security. (Marshall Decl.). The declaration states that the Department conducted a search of the ICE record system that would contain responsive records, the Treasury Enforcement Communications System (TECS). The declaration shows that the Department conducted a reasonable search, and there is no evidence that the search was conducted not in good faith. "Once the agency has shown by convincing evidence that its search was reasonable, i.e., that it was especially geared to recover the documents requested, then the burden is on the requester to rebut that evidence by a showing that the search was not in fact in good faith." *Miller*, 779 F.2d at 1383. Plaintiff has not shown that there is any dispute about the reasonableness of Defendant's search of its records, so summary judgment should be granted in

favor of Defendant on the issue of whether the Defendant produced all relevant records. *See id.* ("Summary judgment would be improper if the adequacy of the agency's search were materially disputed on the record, for such a dispute would indicate that material facts were still in doubt.")

Whether Defendant properly redacted portions of the records Defendant disclosed to Plaintiff is a separate issue discussed in the following section.

**C.      Claimed Exemptions**

The Court has reviewed in camera a clean copy of the records disclosed to Plaintiff. In addition, the Court reviewed the sealed declaration of Gloria Marshall, the Chief of the Department's Information Disclosure Unit (Def.'s Memorandum in Support of Motion for Summary Judgment, Ex. A), which explains in detail why particular exemptions were invoked for certain items in the records. The Court concludes that the Department properly asserted exemptions for each item of information that was redacted.

The Defendant redacted material in accordance with two exemptions. The first is exemption (b)(2), which covers materials "related solely to the internal personnel rules and practices of an agency." The second is exemption (b)(7), which "covers records or information compiled for law enforcement purposes." Plaintiff does not object to Defendant's use of the (b)(2) exemption, only to Defendant's use of the (b)(7)(C) exemption for law enforcement materials that if released might cause an unwarranted intrusion on an individual's privacy. (*See* Response to Motion for Summary Judgment at 2.)

1. Propriety of (b)(2) Exemption

Exemption (b)(2) applies if the material "relate[s] solely to the internal personnel rules and practices of an agency." There are two types of (b)(2) exemptions: "low" and "high." The "low" (b)(2) exemption applies to trivial administrative matters "used for predominantly internal purposes" that are of no genuine public interest. *Crooker*, 670 F.2d at 1073. Exemption is automatic for these materials. *Founding Church of Scientology, Inc. v. Smith*, 721 F.2d 828, 830 n.4 (D.C. Cir. 1983). The "high" (b)(2) exemption encompasses material in which the public has an interest, but the disclosure of which would risk circumvention of lawful agency regulation. *Dep't of Air Force v. Rose*, 425 U.S. 352, 365–67, 369 (1976); *Founding Church of Scientology*, 721 F.2d at 830 n.4.

The Department cited exemption (b)(2) in redacting information such as case and report numbers, the dates on which reports were assigned or created, telephone numbers, and the names of clerical personnel. The nature of the redacted information is apparent because the Department did not redact the headings for each of these database entries. These basic matters relate solely to the internal practices of the agency, and are of little public interest, and are therefore within the scope of (b)(2). The Marshall Declaration indicates that some kinds of file numbers and computer codes were withheld under the "high" level of the (b)(2) exemption—that is, disclosure of this information would risk circumvention of agency regulations or statutes. Courts have found that the (b)(2) exemption may be properly invoked to withhold the following types of items: informant codes, *Lesar v. U.S. Dep't of Justice*, 636 F.2d 472 (D.C. Cir.1980), agency file numbers, *Long v. U.S. Dep't of Justice*, 450 F. Supp. 2d 42, 58 (D.D.C. 2006), U.S. Customs file numbers, *Cappabianca v. Comm'r*, 847 F. Supp. 1558, 1563 (D. Fla. 1994) ("disclosure of the file number, if the code were cracked, could reasonably lead to circumvention of the law"), and violator

identifiers, *Butler v. U.S. Dep't of Justice*, 368 F. Supp. 2d 776, 786 (D. Mich. 2005) ("suspects could decode this information and change their pattern of drug trafficking in an effort to respond to what they determined the DEA knows about them or avoid detection and apprehension [and] create alibis for suspected activities.") (quoting with approval the declaration of DOJ FOIA specialist assigned to case).

In *Lesar*, the D.C. Circuit reasoned that "the public has no legitimate interest in gaining information that could lead to the exposure of confidential sources referred to in criminal investigative files." 636 F.2d at 486. Similarly, the Department here uses exemption (b)(2) to withhold internal agency numbers and computer codes which the Department contends could, if released, allow a sophisticated hacker to "obtain unauthorized access to information and to disrupt system operations or corrupt system data." (Def.'s Memorandum at 9.) Regarding action codes and administrative remarks about the processing of the investigation, the Department argues that dissemination of these records could allow individuals to "anticipate agency action" and thereby circumvent the law. The Court's *de novo* review confirms the Department's assertion that the action codes and administrative remarks are properly redacted.

Plaintiff is likely less concerned with the redaction of these identification codes, than with the redaction of portions of narrative paragraphs detailing the incident in February 2005. Defendant invoked both the (b)(2) and (b)(7)(C) exemptions with regard to the text on one SEACATS report under the heading *Circumstances/Remarks*.[3] The Court has reviewed the redacted text and finds that it discusses sensitive agency information that, if disclosed, might allow individuals to circumvent ICE investigative methods or surveillance. Therefore, it is appropriate for the

---

[3] SEACATS is an incident report record generated by TECS. (Marshall Decl..)

Case 1:07-cv-00028-JAP-RHS   Document 17   Filed 04/03/08   Page 9 of 13

Department to invoke the (b)(2) exemption and withhold this information.

2. Propriety of (b)(7) Exemption

The (b)(7) exemption applies to "records or information compiled for law enforcement purposes," if production of these records could reasonably be expected to produce one of the six adverse outcomes listed in sections (b)(7)(A) to (b)(7)(F). In its November 19, 2006 disclosure, the Department cited only to (b)(7)(C), which applies to records the disclosure of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." The (b)(7) exemption also applies to records that "could reasonably be expected to disclose the identity of a confidential source . . . [or] information furnished by a confidential source," *id.* § 552(b)(7)(D), those that "would disclose techniques and procedures for law enforcement investigations . . . if such disclosure could reasonably be expected to risk circumvention of the law," *id.* § 552(b)(7)(E), or "could reasonably be expected to endanger the life or physical safety of any individual." *id.* § 552(b)(7)(F). The Department briefly mentions exemptions § 552(b)(7)(D)–(b)(7)(F) on page nine of its memorandum, but neither the memorandum nor the Marshall declaration discusses the
9

applicability of these exemptions to Plaintiff's records.[4]

The Department relies primarily on section (b)(7)(C) which is concerned with unwarranted invasions of privacy. The threshold requirement for application of this exemption is that the materials be law enforcement records. Plaintiff does not dispute this point, and it is clear that these records were compiled during a criminal investigation of Plaintiff, and that ICE is a law enforcement agency.

Next, the Department must demonstrate that there would be an unwarranted invasion of the privacy of the "officers and personnel, witnesses, potential sources of information, and third parties tangentially related to the underlying investigation" (Def.'s Memorandum at 9), if their names and actions had not been redacted. To find that an invasion of privacy is "unwarranted" requires balancing the privacy interests of these individuals with the public interest in disclosure.[5] Exemption (b)(7)(C) does not require that the harm from invasion of privacy be manifestly greater than the public interest, only that disclosure "could reasonably be expected to constitute" an unwarranted invasion of privacy. *See U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 756 (1989).

---

[4] The concerns encompassed by the exemptions at § 552(b)(7)(D)–(b)(7)(F) overlap to some extent with the "high" (b)(2) exemption. *See Hardy v. Bur. Alcohol, Tobacco & Firearms*, 631 F.2d 653, 656 (9th Cir. 1980) ("law enforcement materials, the disclosure of which may risk circumvention of agency regulation, are exempt under Exemption 2"); *Caplan v. Bur. of Alcohol, Tobacco & Firearms*, 587 F.2d 544, 547–58 (2nd Cir. 1978) (applying the (b)(2) exemption to withholding of BATF training manual because release might undermine safety of BATF officers); *cf. Lesar*, 636 F.2d at 485 (upholding nondisclosure of informant codes based on (b)(2), though the agency had asserted both (b)(2) and (b)(7)(D)).

[5] In contrast, Exemption (b)(7)(D), which applies to potential disclosure of the identity of confidential informants involves no balancing of interests. *See Sands v. Murphy*, 633 F.2d 968 (1st Cir. 1980).

Plaintiff argues that FOIA should not "protect the identity or identities of those responsible for planting the cocaine that led to the Plaintiff's arrest." (Pl.'s Response ¶ 4.) Plaintiff makes unwarranted assumptions about the conduct of a conjectural Continental Airlines employee, and asks the Court to devalue the privacy interest of this employee based on Plaintiff's unsubstantiated allegations of wrongdoing. The Court finds that the privacy interests of any informants that may be identified in Plaintiff's records are not to be curtailed on the ground that Plaintiff asserts. Exemption (b)(7)(C) protects the interests of agency employees, informants, and tangential third parties in information that people "generally do not make public" and also information that, if disclosed would have "possible adverse effects upon himself or his family." *L & C Marine Transport, Ltd. v. United States*, 740 F.2d 919, 923 (11th Cir. 1984). Defendant asserts that the individuals, whose redacted names are in the records disclosed to Plaintiff, have an interest in not having their names revealed in order to protect themselves and their families from embarrassment, harassment, or reprisal. (Marshall Decl.; Def.'s Memorandum at 11.)

Plaintiff argues that the privacy of the hypothetical Continental Airlines employee who Plaintiff assumes was a source of accusation "should not be allowed to trump the legitimate interest of Plaintiff in pursuing legal action against the responsible parties." (Pl.'s Response ¶ 5.) However, FOIA does not recognize the interest in disclosure claimed by Plaintiff; the courts have widely held that FOIA is not to be used as a discovery tool. *See, e.g.*, *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 144 (1975) ("[FOIA] is fundamentally designed to inform the public about agency action and not to benefit private litigants."); *Columbia Packing Co. v U.S. Dep't of Agric.*, 563 F.2d 495, 499 (1st Cir. 1977) ("[I]t is settled that the disclosure provisions of FOIA are not a substitute for discovery and a party's asserted need for documents in connection with

litigation will not affect, one way or the other, a determination of whether disclosure is warranted under FOIA.")

The Supreme Court has held that in the privacy balancing analysis "the only relevant 'public interest in disclosure' to be weighed . . . is the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contributing significantly to public understanding of the operations or activities of the government.'" *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994) (*quoting Reporters Comm.*, 489 U.S. at 776). FOIA is concerned with the disclosure of information that would "shed light on an agency's performance of its statutory duties" or otherwise let citizens know "what their government is up to." *Reporters Comm.*, 489 U.S. at 773. It is also true that "whether an invasion of privacy is warranted cannot turn on the purposes for which the request for information is made," *id.* at 771, nor on the identity of the requester. However, Plaintiff has advanced no general public interest in disclosure of the identity of the alleged mythical Continental Airlines employee. If such an employee existed, had planted cocaine in Plaintiff's luggage, and then tipped off U.S. Customs, this sheds no light on what the Department "was up to" and how it conducted its statutory duties, unless the Department was complicit in this scheme, a theory that Plaintiff has not even alleged and for which there is no evidence.

Normally the Court would not comment on the content of redacted material that has been reviewed *in camera*.  However, in this instance, the Court believes it would be helpful to Plaintiff and his counsel to dispel Plaintiff's suspicions by advising that there is absolutely nothing in the redacted parts of the records Plaintiff has seen that suggest in the slightest way that Continental Airline representatives provided any of the information which U.S. Customs received that caused U.S. Customs to investigate and arrest Plaintiff.  By so informing Plaintiff and his counsel of the

absence of anything that would support Plaintiff's suspicions, the Court is comfortable that it has not revealed any information the government considers to be sensitive.

## IV. CONCLUSION

The Court concludes that the Department conducted a reasonable search of its records for documents responsive to Plaintiff's request, and invoked the statutory exemptions to redact only those portions of the records necessary to "preserv[e] the effective operation of governmental agencies." *Crooker*, 670 F.2d at 1074. Defendant's motion for summary judgment should be granted. Plaintiff's request for attorney's fees and litigation costs should be denied.

IT IS THEREFORE ORDERED that Defendant Department of Homeland Security's Motion for Summary Judgment (Doc. No. 14) is GRANTED.

*James A. Parker*
SENIOR UNITED STATES DISTRICT JUDGE